[Cite as *In re H.H.*, 2018-Ohio-2636.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | Case No. 18CA6 |
| | : | |
| H.H. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| | : | |
| | : | **Released: 06/26/18** |

APPEARANCES:

Joshua D. Price, Pomeroy, Ohio, for Appellant.

Christopher Tenoglia, Pomeroy, Ohio, for Appellee.[1]

McFarland, J.

**{¶1}** Appellant, the child's maternal grandmother, appeals the trial court's judgment that (1) modified its prior order that granted her legal custody of the child, and (2) designated Appellee, the child's biological father, the child's legal guardian and custodial parent. Appellant argues that the trial court abused its discretion by determining that a change in circumstances had occurred so as to warrant a modification of the prior legal-custody order. Appellant recognizes that Appellee has made substantial improvements to his life since the court entered the legal-custody order, but she claims that Appellee's changed circumstances are not relevant

under the custody-modification statute.  Instead, Appellant posits that the

relevant question under the custody-modification statute is whether a change

has occurred in either the custodian's or the child's circumstances.

Appellant contends that the evidence fails to support any finding that either

her or the child's circumstances have changed in a material way since the

time of the court's original legal-custody order.  Although appellant

recognizes that the child has since developed a relationship with Appellee,

she maintains that the mere development of a relationship with a biological

parent does not adequately show a material change in the child's

circumstances.

{¶2}  Based upon the facts present in the case at bar, we do not agree

with Appellant.  Rather, we believe that the trial court could have rationally

concluded that Appellee's release from prison resulted in a change in the

child's circumstances.  Before Appellee's release from prison, the child and

Appellee did not share any interaction and did not have a relationship.

Appellee's release from prison has completely changed the nature of the

child's interaction and relationship with Appellee.  Now that Appellee no

longer is in prison, the child has frequent visits with Appellee; before, he had

none.  Additionally, Appellee's release from prison means the child now is

---

[1] Appellee did not file an appellate brief or otherwise enter an appearance in this appeal.

experiencing the growth of a normal father-child relationship. Thus, Appellee's entry into the child's life, when Appellee was completely absent before, constitutes a change in the child's circumstances.

{¶3} Accordingly, we overrule Appellant's sole assignment of error and affirm the trial court's judgment.

## I.  FACTS

{¶4} Shortly after the child's birth, Meigs County Job and Family Services, Children Services Division (the agency), filed a complaint that alleged the child is a dependent child. The complaint stated that following the child's birth, the agency received a report that the child displayed signs of severe heroin withdrawal. The mother subsequently agreed to place the child with Appellant until the mother could maintain sobriety. The court later adjudicated the child dependent and placed the child in Appellant's legal custody.

{¶5} Approximately a year and one-half later, appellee filed a pro se motion that requested the court to modify its order that granted Appellant legal custody of the child. Appellee claimed that a change in circumstances had occurred: "I was incarcerated when [the child] was born[.]. His mother was on heroine [sic] and lost her rights[.]. I just got DNA established and I want custody of my son."

{¶6} The trial court held a hearing to consider Appellee's motion to modify the legal-custody order. At the hearing, the parties appeared to agree that Appellee's circumstances had changed since the time of the court's initial legal-custody order: Appellee no longer is in prison; he is employed; and he has married. Additionally, the parties agreed that Appellant has provided the child with appropriate care.

{¶7} However, the parties did not agree that a change in circumstances had occurred so as to justify modifying the legal-custody order. Appellant argued that despite the commendable changes that had occurred in Appellee's life, neither Appellant nor the child had experienced a change in circumstances. Appellee, on the other hand, claimed that the child's circumstances have changed. Appellee asserted that at the time of the original custody order, he was not part of the child's life, but following his release from prison, the child has become integrated into Appellee's life.

{¶8} The trial court subsequently granted Appellee's motion to modify the prior legal-custody order and designated him the child's legal guardian and custodial parent. The court found that Appellee has made substantial improvements in his life since November 2015, when it awarded Appellant legal custody of the child. The court further explained that Appellee's "relationship has blossomed with [the child]. The establishment

and development of the father's relationship with his infant (now toddler)

son, along with all the other facts, cause this Court to find that the father has

met his burden of proof and shown a substantial change of circumstances

* * *."

## II.  ASSIGNMENT OF ERROR

{¶9}  Appellant timely appealed and raises one assignment of error:

"The trial court's decision that appellee has established a substantial change in circumstances is an abuse of discretion and against the manifest weight of the evidence as the court improperly relies on changes with father instead of changes with the custodian or the child as required pursuant to Revised Code 3109.04(E)(1)(a) and Revised Code 2151.42."

## III.  LEGAL ANALYSIS

{¶10}  In her sole assignment of error, Appellant contends that the

trial court abused its discretion by modifying the prior decree that granted

her legal custody of the child.  In particular, Appellant asserts that the

evidence fails to support a finding that a change in circumstance has

occurred.  She acknowledges that since the time of the original decree, the

father has been released from prison, developed a relationship with the child,

obtained stable employment, and married.  Appellant claims, however, that

the father's positive progress in his life is legally insufficient to show that

either her or the child's circumstances have changed.  She further alleges

that the record does not contain any evidence that the father's newly-formed relationship with the child has "affected the child in a material way."

{¶11}  Although Appellee did not file an appellate brief, he argued during the trial court proceedings that his newly-formed relationship with the child constitutes a change in the child's circumstances.[2]  He noted that both at the time of the child's birth and at the time of the original decree that granted Appellant legal custody of the child, he was incarcerated.  Appellee thus contended that at the time of the original decree, his contact and relationship with the child were non-existent and the child did not have any paternal relationship.  Now, however, the child sees Appellee on a frequent and regular basis.  Appellee claimed that the child's experience changed from a non-existent paternal relationship to the existence of frequent paternal contact and visitation.  Appellee thus asserted that the development of a father-child relationship constitutes a change in the child's circumstances.

A.  STANDARD OF REVIEW

---

[2] When an appellee fails to file an appellate brief, App.R. 18(C) authorizes the appellate court to accept an appellant's statement of facts and issues as correct, and reverse a trial court's judgment if the appellant's brief "reasonably appears to sustain such action."  In other words, an appellate court may reverse a judgment based solely on consideration of an appellant's brief.  *See Harper v. Neal*, 4th Dist. Hocking No. 15CA25, 2016–Ohio–7179, ¶14, *Fed. Ins. Co. v. Fredericks*, 2nd Dist. Montgomery No. 26230, 2015–Ohio–694, ¶79; *Sites v. Sites*, 4th Dist. Lawrence No. 09CA19, 2010–Ohio–2748, ¶13; *Sprouse v. Miller*, 4th Dist. Lawrence No. 06CA37, 2007–Ohio–4397, fn. 1.  In the case at bar, however, we conclude that appellant's brief does not support a reversal of the trial court's judgment.

{**¶12**} "A trial court has broad discretion in proceedings involving the care and custody of children." *In re Mullen,* 129 Ohio St.3d 417, 2011–Ohio–3361, 953 N.E.2d 302, ¶14. Appellate courts thus generally afford the utmost deference to trial court decisions regarding the modification of a prior legal custody order issued under R.C. 2151.353(A)(3). *In re T.J.*, 10th Dist. Franklin No. 10AP-201, 2010-Ohio-4191, 2010 WL 3479872, ¶14; *In re N.F.,* 10th Dist. Franklin No. 08AP–1038, 2009–Ohio–2986, ¶9; *see Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997); *Miller v. Miller,* 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988); *Wilson v. Farahay*, 4th Dist. Adams No. 14CA994, 2015-Ohio-2509, 2015 WL 3886438, ¶15; *In re E.W.,* 4th Dist. Washington Nos. 10CA18, 10CA19, and 10CA20, 2011–Ohio–2123, ¶18. Consequently, absent an abuse of discretion, we ordinarily will not disturb a trial court's decision to modify a legal custody order. *T.J.* at ¶14; *see Davis,* 77 Ohio St.3d at 418. Typically, "[t]he term 'abuse of discretion' implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable." *In re H.V.,* 138 Ohio St.3d 408, 2014–Ohio–812, 7 N.E.3d 1173, ¶8. In *Davis,* however, the court explained the abuse of discretion standard that applies in child-custody proceedings as follows:

> The standard for abuse of discretion was laid out in the leading case of *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, but applied to custody cases in *Bechtol v. Bechtol* (1990), 49 Ohio St.3d 21, 550 N.E.2d 178,

syllabus:

"Where an award of custody is supported by a substantial amount of credible and competent evidence, such an award will not be reversed as being against the weight of the evidence by a reviewing court. (*Trickey v. Trickey* [1952], 158 Ohio St. 9, 47 O.O. 481, 106 N.E.2d 772, approved and followed.)"

The reason for this standard of review is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page. As we stated in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 410–412, 461 N.E.2d 1273, 1276–1277:

"The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony. * * *

* * *

"* * * A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not. The determination of credibility of testimony and evidence must not be encroached upon by a reviewing tribunal, especially to the extent where the appellate court relies on unchallenged, excluded evidence in order to justify its reversal."

This is even more crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does *not* translate to the record well. *Id.* at 418-419.

"While we might be 'perplexed' by this hybrid abuse-of-discretion-manifest-weight standard, the Ohio Supreme Court has not overruled, modified, or clarified the standard set forth in *Bechtol* or *Flickinger*." *In re E.S.*, 4th Dist. Pickaway No. 17CA16, 2018-Ohio-1902, ¶23, citing *In re A.L.P.*, 4th Dist. Washington No. 14CA37, 2015-Ohio-1552, at ¶23. We therefore continue

to apply this standard when reviewing child custody matters that do not involve the termination of parental rights.  *E.S.* at ¶23.

{**¶13**}  Accordingly, reviewing courts should afford great deference to trial court child custody decisions.  *Id.* at ¶24; *E.W.* at ¶19, citing *Pater v. Pater,* 63 Ohio St.3d 393, 396, 588 N.E.2d 794 (1992).  Additionally, because child custody issues involve some of the most difficult and agonizing decisions that trial courts are required to decide, courts must have wide latitude to consider all of the evidence, and appellate courts should not disturb a trial court's judgment absent an abuse of discretion.  *Davis,* 77 Ohio St.3d 418; *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003–Ohio–1441, 787 N.E.2d 44 (4th Dist.), ¶24; *Hinton v. Hinton,* 4th Dist. Washington No. 02CA54, 2003–Ohio–2785, ¶ 9; *Ferris v. Ferris,* 4th Dist. Meigs No. 02CA4, 2003–Ohio–1284, ¶ 20.  As the Ohio Supreme Court explained:

> In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record. *Trickey,* 158 Ohio St. at 13.

Thus, this standard of review does not permit us to reverse a trial court's decision if we simply disagree with it.  We may, however, reverse a trial court's custody decision if the court made an error of law, if its decision is unreasonable, arbitrary, or unconscionable, or if substantial competent and

credible evidence fails to support it. *Davis,* 77 Ohio St.3d at 418–419, 421

(explaining "abuse of discretion standard" and stating that courts will not

reverse custody decisions as against the manifest weight of the evidence if

substantial competent and credible evidence supports it, courts must defer to

fact-finder, courts may reverse upon error of law, and trial court has broad

discretion in custody matters).

### B.  R.C. 2151.42(B)

{¶14}  Although trial courts possess broad discretion when reviewing

a motion to modify a legal custody order issued under R.C. 2151.353(A)(3),

R.C. 2151.42(B) defines the legal standard that trial courts must employ.[3]

The statute provides:

---

[3] We recognize that appellant also asserts that R.C. 3109.04(E)(1)(a) applies.  That statute states:

> The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.  In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
> (i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
> (ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
> (iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child.

R.C. 3109.04(E)(1)(a), like R.C. 2151.42(B), requires a court to find a change in circumstances as a threshold matter.  Unlike R.C. 2151.42(B), however, R.C. 3109.04(E)(1)(a) sets forth three additional alternative findings that a trial court must make.  Moreover, the terms of R.C. 3109.04(E)(1)(a) indicate that it applies to decrees allocating parental rights and responsibilities, not to orders that award a nonparent legal custody of an adjudicated abused, neglected, or dependent child.

A court shall not modify or terminate an order granting legal custody of a child unless it finds, based on facts that have arisen since the order was issued or that were unknown to the court at that time, that a change has occurred in the circumstances of the child or the person who was granted legal custody, and that modification or termination of the order is necessary to serve the best interest of the child.

{¶15} In the case at bar, Appellant has not challenged the trial court's best-interest finding. Instead, she limits her argument to the court's change-in-circumstances finding. We limit our review accordingly.

## C. CHANGE IN CIRCUMSTANCES

{¶16} The change-in-circumstances requirement exists to promote stability in a child's life. *In re Brayden James,* 113 Ohio St.3d 420, 2007–Ohio–2335, 866 N.E.2d 467, ¶15; *e.g., King v. King*, 4th Dist. Jackson No. 13CA8, 2014-Ohio-5837, 2014 WL 7478286, ¶46. As the court explained in *Davis*:

> "The clear intent of [the change-in-circumstances requirement] is to spare children from a constant tug of war * * *. The statute is an attempt to provide some stability to the custodial status of the children, even though [a] parent out of custody may be able to prove that he or she can provide a better environment." 77 Ohio St.3d at 418, quoting *Wyss v. Wyss,* 3 Ohio App.3d 412, 416, 445 N.E.2d 1153 (1982); *accord In re Brayden James*, 113 Ohio St.3d 420, 866 N.E.2d 467, ¶15.

---

In the case at bar, appellant's argument before the trial court centered upon the change-in-circumstances requirement. She did not raise any of the issues outlined in R.C. 3109.04(E)(1)(a)(i) to (iii). Likewise, on appeal, appellant focuses upon the change-in-circumstances requirement and does not raise any specific argument regarding R.C. 3019.04(E)(1)(a)(i) to (iii), other than to mention those provisions in

{¶17} Thus, a parent seeking to disrupt a child's custodial status must make a threshold showing of a change in circumstances. "This is a high standard." *Fisher v. Hasenjager,* 116 Ohio St.3d 53, 2007–Ohio–5589, 876 N.E.2d 546, ¶33. Appellate courts must not, however, "make the threshold for change so high as to prevent a trial judge from modifying custody if the court finds it necessary for the best interest of the child." *Davis,* 77 Ohio St.3d at 420–421. Accordingly, although the change "need not be 'substantial,' "it must be more than slight or inconsequential." *Id.* at 417–418; *Bragg* at ¶23 ("The change must be significant—something more than a slight or inconsequential change."). A change in circumstances must be one of consequence—one that is substantive and significant—and it must relate to the child's welfare. *Davis,* 77 Ohio St.3d at 418; *In re D.M.,* 8th Dist. Cuyahoga No. 87723, 2006–Ohio–6191, ¶35, quoting *Rohrbaugh v. Rohrbaugh,* 136 Ohio App.3d 599, 604–05, 737 N.E.2d 551 (7th Dist. 2000) (explaining that the phrase change of circumstances means "'an event, occurrence, or situation which has a material * * * effect upon a child'"); *Beaver v. Beaver,* 143 Ohio App.3d 1, 10, 757 N.E.2d 41 (4th Dist. 2001), quoting *Holtzclaw v. Holtzclaw,* Clermont App. No. CA92–04–036 (Dec. 14, 1992) (" 'Implicit in the definition of changed circumstances is that the

passing. For this reason, we presume that R.C. 2151.42(B) sets forth the applicable standard and do not address any of the alternative findings that 3109.04(E)(1)(a)(i) to (iii) require.

change must relate to the welfare of the child.' "). Additionally,

the change in circumstances must be based upon facts that have arisen since

the prior custody order or that were unknown at the time. R.C.

2151.42(B); *Brammer v. Brammer,* 194 Ohio App.3d 240, 2011–Ohio–2610,

955 N.E.2d 453, ¶17 (3rd Dist.).

{**¶18**} Furthermore, "[i]n determining whether a change in

circumstances has occurred so as to warrant a change in custody, a trial

judge, as the trier of fact, must be given wide latitude to consider all issues

which support such a change." *Davis,* paragraph two of the syllabus.

Consequently, "[w]e review the trial court's determination regarding a

change of circumstances for an abuse of discretion." *In re L.M.*, 2nd Dist.

Greene No. 2010-CA-76, 2011-Ohio-3285, ¶15, citing *In re A.N.,* 2nd Dist.

Greene Nos. 2010 CA 83, 2011-CA-7, 2011–Ohio–2422, ¶21; *accord Cutlip*

*v. Gizzo*, 9th Dist. Summit No. 28535, 2018-Ohio-647, 2018 WL 1004373,

¶10; *In re A.S.*, 2nd Dist. Montgomery No. 27156, 2016-Ohio-7622, 2016

WL 6575847, ¶12.

{**¶19**} The Ohio Supreme Court's decision in *James* informs our

decision in this case. In *James*, the court held that improvements or changes

in a noncustodial parent's life do not ordinarily satisfy the change-in-

circumstance requirement. In that case, the trial court adjudicated the child

abused and dependent, and the children services agency developed a case plan for the parents. The parents later stipulated to placing the child in the grandparents' legal custody. The court permitted the parents to have supervised visits with the child. Nearly three years later, the parents filed a motion to obtain custody of the child. The trial court granted the parents' motion. On appeal, the appellate court affirmed and held that the change-in-circumstances requirement is unconstitutional when applied to a parent seeking custody of a child from a nonparent with legal custody.

{¶20} The Ohio Supreme Court reversed. The court did not agree that the change-in-circumstances requirement violates a parent's fundamental rights. The court noted that the trial court had adjudicated the child abused and dependent, the parents voluntarily relinquished custody of the child, and the parents retained residual parental rights, privileges, and responsibilities. The court pointed out that an abuse, dependency, or neglect adjudication constitutes an implicit finding that "the child's custodial and/or noncustodial parents are unsuitable." *Id.* at ¶22. The court thus found its prior cases exalting a suitable parent's paramount right to custody inapposite. The court therefore found no constitutional impediment to requiring a noncustodial parent to establish a change in circumstances before a trial court may modify an order granting legal custody to a nonparent.

**{¶21}** Moreover, the court found the facts legally insufficient to establish that a change in the child's or custodians' circumstances had occurred. Although the majority's decision fails to reveal the facts to support its determination that a change in circumstances had not occurred, one of the dissenting opinions, as well as the lower courts' decisions, reveal the underlying facts. In her dissent, Justice Lundberg Stratton pointed out that the parents "diligently" worked on their case plan, "regularly visited" the child, paid child support, "changed the circumstances that had originally caused the state to remove their child from them," and "did everything the court asked of them." *Id.* at ¶40 and 41. In the appeal after remand, the court determined that based upon the Ohio Supreme Court's reversal, the noncustodial parents' "commendable progress" in attending counseling sessions and completing various parenting programs, "was not pertinent to a 'change in circumstances' determination." *In re B.J.,* 1st Dist. Hamilton No. C–081261, 2009–Ohio–6485, ¶19; *In re James,* 163 Ohio App.3d 442, 2005–Ohio–4847, 839 N.E.2d 39 (1st Dist. 2005), ¶3. Neither was the birth of a new sibling to the noncustodial parent, nor the noncustodial parent's purchase of a home and demonstration of stability. *James,* 163 Ohio App.3d at ¶66. In essence, the Ohio Supreme Court's *James* decision indicates that a noncustodial parent previously deemed unsuitable cannot establish a

change in circumstances sufficient to modify a prior custody order simply by showing that the parent now is suitable. *See Brayden James*, 113 Ohio St.3d 420, at ¶42 (Lundberg Stratton, J., dissenting); *In re L.M.*, 2nd Dist. Greene No. 2010-CA-76, 2011-Ohio-3285, 2011 WL 2584195, ¶20 (stating that "[t]he fact that a parent implicitly found unsuitable by an abuse/dependent adjudication, may now be a suitable parent does not necessarily entitle her to regain legal custody").

**{¶22}** In the case at bar, we believe that the evidence that Appellee presented is similar to the evidence that the parents presented in *James* and that the Ohio Supreme Court determined is insufficient, as a matter of law, to constitute a change in circumstances. Just as the parents in *James,* Appellee made commendable progress since the court granted legal custody to Appellant. Appellee no longer is in jail, obtained stable employment, and married.

**{¶23}** Significantly, however, unlike the parents in *James*, Appellee did not share a pre-existing relationship with his child. In *James*, the parents had a pre-existing, established relationship with their child. Additionally, the parents had regular visitation with their child while he was in the grandparents' legal custody. The facts in *James* do not indicate that after the court granted the grandparents legal custody, the child experienced any

material change in the nature of his relationship with his biological parents. In this case, by contrast, the child experienced a drastic change in the nature of his relationship with Appellee—his biological father—since the date the court granted Appellant legal custody. Unlike the parents in *James* who had a pre-existing relationship with their child, here, Appellee did not have any relationship at all with his child until Appellee's September 2016 release from prison. Thus, from the time of the child's July 2015 birth through September 2016, the child did not have any relationship with Appellee, his biological father. After Appellee's release from prison, the child began to experience frequent visitation with Appellee. The nature of the child's relationship with Appellee changed from completely non-existent to frequent-contact. In contrast, in *James*, the evidence does not indicate that the child experienced any change in the nature of his biological relationships or in the frequency of his visits.

{¶24} We believe that the foregoing facts distinguish this case from *James* and show that child here has experienced a change in circumstances. When the child was born, Appellee was in prison and did not have even the slightest relationship with the child. Instead, the child's mother relinquished custody to the maternal grandmother. Since that time, the child has experienced the growth of an entirely new relationship with Appellee and

Appellee's extended family. Unlike the situation in *James* where the familial relationship remained on a continuum, in this case, the familial relationship between the father and the child did not follow a continuous line from birth to present. Instead, Appellee was not part of the child's life until his release from prison. We do not believe that the trial court abused its discretion by determining that under the circumstances present in the case at bar, the complete exclusion of Appellee from the child's life, followed by his inclusion, constitutes a change-in-circumstances within the meaning of R.C. 215.42(B).

{¶25} We recognize Appellant's argument that the record does not contain any evidence to show that Appellee's entry into the child's life has actually affected the child in a material way. However, we believe that the trial court could have rationally concluded that the complete absence of a biological parent from a child's life to the integration of a biological parent into the child's life would have a profound effect upon a child. Indeed, it seems there is little that could affect a child more than the relationship, or lack thereof, that a child shares with a biological parent. *See generally In re P.A.R.*, 4th Dist. Scioto No. 13CA3550, 2014-Ohio-802, 2014 WL 861529, ¶ 27 (noting that "a nonresidential parent's increased visitation with a child

who is in a nonparent's custody" might, in a given case, constitute a change in circumstances).

{¶26} Consequently, we do not agree with Appellant that the trial court abused its discretion by finding that a change in circumstances has occurred.

## IV. CONCLUSION

{¶27} Accordingly, based upon the foregoing reasons, we overrule Appellant's sole assignment of error and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court,


BY:     _____
        Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**